PeabsoN, C. J.
 

 By the accumulation of interest, the mortgage-debt exceeded the value of the slaves ; so it is assumed on both sides that Doctor Witherspoon’s equity, of redemption being of no value, was abandoned, and may be put out of the consideration.
 

 The equity of the plaintiff is put on the ground, that the claim of Doctor Strudwiek to hold the negroes as a security for the debts due to him by Doctor Witherspoon, according to the understanding and agreement made between him and Mrs. Witherspoon, should not be allowed, because it would disappoint the expectations of Mr. Shannon, whose sole object in agreeing to transfer the mortgaged negroes on payment of the principal of his debt, and to forgive the accumulated interest, was to benefit Mrs. Witherspoon exclusively, and so the claim, made by Dr. Strudwiek, if allowed, would be a fraud on Mr. Shannon.
 

 The doctrine that a court of equity will not enforce the performance of an agreement made in fraud of a third person, is a familiar one, but it is based upon a very refined principle— difficult of application to the ordinary transactions of life, and is put upon the ground of preventing
 
 positive
 
 and
 
 actual
 
 fraud.
 

 Our opinion is against the plaintiffs. Mr. Shannon, upon the facts of the case, was not the mere dispenser of a charity. He had a prudent regard to his own interest; and the amount of it is this : he was willing, in order to avoid the necessity of enforcing his rights as mortgagee, and the embarrassments to which he would have been subjected in taking the negroes out of the possession of Dr.' Witherspoon and of Mrs. Witherspoon, owing to the peculiar relations of respect, &c., existing between them, to forgive the accumulated interest on his debt and to transfer and assign his right and title under the mortgage, provided the principal of his debt was paid or security for prompt payment was given: with the understanding that any of the mortgaged negroes, that could be retained by this
 
 *291
 
 arrangement, should be held for the benefit of Mrs. "Wither-spoon.
 

 The question is : as Mrs. "Witherspoon, in order to comply with the condition which Mr. Shannon annexed to his bounty, to wit: the immediate payment or security for the prompt payment of the principal of his debt, was under the necessity of coming to an understanding with Doctor Strudwick, that if he would enable her to perform the condition, imposed by Mr. Shannon, and would allow' her the full use of the property during her life, he should, after her death, hold the negroes as a security for the debts due to him by Doctor Witherspoon, does the doctrine of preventing a fraud apply to the case and forbid the Court from allowing the agreement made between Dr. Strudwick and Mrs. Witherspoon from being acted on and carried into effect by Dr. Strudwick, who has acquired the legal title ?
 

 We are of opinion that the doctrine, that equity will not enforce an agreement in fraud of a third person, does not apply to the case.
 

 Mr. Shannon was generous in agreeing to forgive the accumulated interest, but by stipulating that the principal of his debt must be paid, or its prompt payment be secured, he gave up the right to be considered in the light of a mere dispenser of a bounty, because he imposed a condition, and, of course, expected- that Mrs. Witherspoon would be under the necessity of making some agreement, or arrangement, in respect to the property, to enable her to comply with the condition.— Doctor Strudwick, in the exercise of a spirit of generosity, equal to that of Mr. Shannon, aided Mrs. Witherspoon, and enabled her to comply with the condition. What ground is there to support the allegation, that when Doctor Strudwick, as a condition to the aid which he was about to render, stipulated that after the full enjoyment of the property by Mrs, Witherspoon during her life, it should then stand as a security for his debts due by Dr. Witherspoon, he perpetrated a fraud upon Mr. Shannon, and on that account, should not be allowed to have the benefit of the arrangement made between
 
 *292
 
 him and Mrs. Witherspoon ? We'can see none, either in law, equity or morals. Mr. Shannon made no stipulation in behalf of the
 
 children
 
 of Mrs. Witherspoon. His o'bject 'was, after securing, without further embarrassment, the payment of the principal of his debt, to secure to Mrs. Witherspoon .the full enjoyment of such of the mortgaged negroes as could be saved, after a compliance with his terms. These were complied with, and his obligation to transfer all of his right and title under the mortgage deed on the payment of the residue of his principal money, was absolute, and without any declaration of trust in favor of the children of Mrs. Wither-spoon, or any other stipulation with a view of restricting Mrs. Witherspoon from the privilege of making an agreement necessary to enable her to comply with his terms. A payment of a part of a debt is not a
 
 satisfaction
 
 of the whole, as between the creditor and debtor, but when a third person comes in and assumes the payment of a part, in satisfaction of the whole, the case is materially altered, and there is then no reason on which the creditor can object to an agreement, which the debtor was under the necessity of making, in order • to enable him to pay the part required.
 

 So, in the view we take of the c.ase, Doctor Strudwick has not been guilty of any
 
 positive
 
 or
 
 actual
 
 fraud, so as to entitle the plaintiffs to take the ground that a court of equity ought not to allow him to insist on the. arrangement, by which the negroes, after the full enjoyment of Mrs. Witherspoon, during her life-time, were to be held by him as a security for his debts ; but we are satisfied that Dr. Strudwick, so far from having, perpetrated a fraud, either on Mr. Shannon or the children of Mrs. Witherspoon, has acted the part of a friend, and by making himself liable to Mr. Shannon for the principal of the debt, and thereby securing to Mrs. Witherspoon the full enjoyment of the negroes, embraced by the mortgage, has entitled himself to an equal share of .credit in acting as the friend of Dr. Witherspoon and Mrsi Witherspoon and the family. Indeed, the equity, which the bill seeks to set' up under cover of the bounty of Mr. Shannon to Mrs. Wither-
 
 *293
 
 spoon, is based on the idea that his intention was to restrict her full enjoyment in this : Mrs. Witherspoon was not to be at liberty to, dispose of the negroes, as seemed right to her, according to her convictions of justice and moral duty, but she was obliged to forego all such obligations and allow the negroes to devolve on her distributees, under the statute of distributions, Unless she saw proper to. make a will and give them to her children in proportions differing from the manner in which they would have been entitled under the statute. This ussumption of the right, on the part of Mr. Shannon, to control the free agency of Mrs. Witherspoon in disposing of the negroes, is inconsistent with the idea of making her the absolute owner, and is contradicted by the face of his bond.
 

 The effect of the bond of Mr. Shannon, dated 27th December, 1847, to Doctor Strudwick, (IT. K. Witherspoon having released his right under the bond, may be put out of the case) was to give Dr. Strud.wick a right to an absolute conveyance, by Shannon, of all his right and title to the negroes under the mortgage, on the payment of $1500. Strudwick, under this bond, had a right to call for an absolute conveyance of Shannon’s title without any declaration of trust, either in favor of of Mrs. Witherspoon or of her children. So, the deed executed by Shannon, in pursuance of the award of Mr. Norwood, was simply a performance of the obligation imposed on Mr. Shannon by his bond — the sum of $1500 having been paid to. him.
 

 Thus, the legal title passed to Dr. Strudwick, subject only to the parol trusts, admitted by his answer, as growing out of the rmderstanding between him and Mrs. Witherspoon ; that is, to allow Mrs. Witherspoon to have the full use of the negroes during her life, and then in trust as a security to Dr. Strud-wick for the debts due him by Dr. Witherspoon, leaving a resulting trust in favor of Mrs. Witherspoon after the payment of the debts due to Doctor Strudwick.
 

 By her will, Mrs. Witherspoon disposes of her interest
 
 *294
 
 among her children, giving a part to Mrs. Bowers, one of tbe plaintiffs.
 

 In June, 1854, after the death of Mrs. Witherspoon, all of her children, except the plaintiff, Mrs. Bowers, made a full settlement with Doctor Strudwick of all matters growing out of this and other transactions, as appears by a deed executed by the parties .of that dat.e, by which Doctor Strudwick releases all of his debts, of every kind, and takes the negroes, not before disposed of,
 
 except
 
 Virgil, as his absolute property.
 

 Mrs. Bowers was not a party to this arrangement, and the question is, has her claim, under the bequest by her mothei’’s will, to set up the resulting trust after the satisfaction of the debts due to Dr. Strudwick, been waived, or released, or surrendered in any manner.
 

 It is said this result has been effected by her acceptance of the negro,
 
 Virgil,
 
 and by several letters of her’s to Mr. Nor-wood, which'are exhibited.
 

 Without discussing the questions, made in respect to her mental capacity, it is only necessary to say, that it does not appear that in accepting Virgil, or while writing the letters she had a full knowledge of her rights, and there is no evidence that she ever did, or said any thing with an intent to confirm the settlement made by her brothers and sisters with Doctor Strudwick, and there is nothing to show that she did not receive Virgil, supposing him to be a part of her legacy under her mother’s will. The plaintiffs have an equity to redeem the negroes and to se.t up the resulting trust after the payment of the debts due by Dr. Witherspoon to the defendant, Dr. Strudwick, and, to this end, are entitled to an account, on the footing, that Virgil is to be considered part of the property, liable, in the first instance, to-the payment of the debt of Dr. Strudwick. So, they will take an order for an account, or will submit to have the bill dismissed, as they may be advised.
 

 Per CuriaM, Decree accordingly.